**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SLAVE LEGACY, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:23-cv-152 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| SON OF SLAVE, *et al.*, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER WITHOUT NOTICE TO DEFENDANT (WITHIN
DOC. NO. 5); ORDERING PLAINTIFF TO SERVE DEFENDANT WITH A
COPY OF THIS ORDER; AND ORDERING PLAINTIFF TO FILE A NOTICE
INFORMING THE COURT WHEN IT HAS SERVED THIS ORDER ON
DEFENDANTS**

---

Pending before the Court is the Motion for Temporary Restraining Order, within the filing

titled "Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. No.

5), filed on June 6, 2023 by Plaintiff, Slave Legacy, LLC ("Plaintiff" or "Slave Legacy").

Specifically, pending before the Court is the portion of Document Number 5 in which Plaintiff

seeks a temporary restraining order ("TRO") without notice to the defendants[1] (the "TRO

Motion").  (*See* Doc. No. 5 at PageID 35 (seeking a TRO without notice); *see also* Docket Entry

for Doc. No. 5 ("MOTION for Temporary Restraining Order *without Notice*")) (emphasis in

original).)

The Court finds that Plaintiff's request for a TRO without notice to the Defendants cannot

be granted because Plaintiff did not meet procedural requirements for issuance of the requested

---

[1] The defendants in this case are Son of Slave and Mark Laquan Akridge (collectively, the "Defendants").  (Doc. No. 1.)

1

TRO.  Therefore, the Court **DENIES** Plaintiff's motion within its filing titled "Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. No. 5) for issuance of the requested temporary restraining order without notice to the Defendants.  The Court highlights that it is <u>not</u> deciding at this time the Plaintiff's request for a preliminary injunction that is also in Document Number 5.  Instead, the Court plans to decide that portion of Document Number 5 after holding a telephonic informal preliminary conference with the parties or their attorneys (in accordance with Local Rule 65.1(a)) to discuss a schedule for briefing and a potential hearing on that request.

## I.  BACKGROUND

Through its previously-filed Verified Complaint, Plaintiff brings three claims against the Defendants: (1) Copyright Infringement; (2) Infringement of a Federally-Registered Trademark; and (3) Violation of Ohio's Deceptive Trade Practices Act.  (Doc. No. 1.)  Plaintiff alleges that the band SLAVE "was a legendary Ohio-based funk band based out of Dayton, Ohio" and that Plaintiff "oversees the interests in SLAVE master recordings, musical compositions, and other intellectual property."  (*Id.* at PageID 1.)  Plaintiff also alleges that Defendant Son of SLAVE "is a band performing the songs and musical compositions of Plaintiff without permission, playing at various venues and establishments throughout the United States, including Ohio."  (*Id.*)  Additionally, Plaintiff alleges that Defendant Mark LaQuan Akridge "is a musician and leader of the band known as Son of SLAVE."  (*Id.* at PageID 2.)  Plaintiff has referred to Son of SLAVE as a "tribute band." (*Id.* at PageID 14.)

Plaintiff alleges in the Verified Complaint that the band SLAVE created, recorded, and released numerous original musical compositions (defined as the "Copyright Works").  (*Id.* at PageID 2-3.)  According to Plaintiff, it "became co-owner of the Copyright Works pursuant to a

resolution" of a 2018 lawsuit that was litigated in the Southern District of New York. (*Id.* at PageID 3.) Plaintiff also alleges that "Plaintiff and the band SLAVE have used the SLAVE Trademark since approximately 1976" and that Plaintiff is the owner of "U.S. Registration Number 97521349, registered July 26, 2022, for the SLAVE trademark for IC 009." (*Id.* at PageID 4-5.)

In the TRO Motion, Plaintiff states that, "[p]ursuant to Rule 7(b) and 65 of the Federal Rules of Civil Procedure and Loc. R. 65.1, [it] moves the Court for entry of a Temporary Restraining Order … enjoining [the Defendants] from performing the Copyright Works or utilizing the SLAVE trademark as referenced in Plaintiff's Verified Complaint." (Doc. No. 5 at PageID 30.) Plaintiff argues that the TRO Motion "should be granted because Plaintiff would suffer immediate loss, irreparable harm and irreversible injury before notice can be given or before Defendants can be heard on this Motion." (*Id.* at PageID 35.) Plaintiff also argues that its requests for a TRO and for a preliminary injunction "should be granted because (1) Defendants' copyright and trademark infringement by publicly performing the Plaintiff's Copyright Works is causing substantial harm to Slave's brand, reputation, and legacy; (2) Defendants are scheduled to perform at Levitt Pavilion Dayton on June 10, 2023 which will lead to mark confusion and further harm to Plaintiff; and (3) Defendants have ignored a cease-and-desist letter from Plaintiff and plan to continue infringing on Plaintiff's intellectual property." (*Id.* at PageID 30-31.) Plaintiff's counsel sent the cease-and-desist letter via electronic mail to an email address purported to be for Defendant Akridge on or around May 1, 2023. (Doc. No. 1 at PageID 14-15.)

## II. ANALYSIS

### A. Legal Standards

Federal Rule of Civil Procedure 65 addresses temporary restraining orders and "provides the procedure that the district court must follow when granting injunctive relief." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). The rule places limits on when a

court may issue a TRO "without written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65. A court may do so "only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; <u>and</u> (B) the movant's attorney certifies in writing any efforts made to give notice <u>and</u> the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1) (emphasis added). The rule also states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Regarding not providing an adverse party with notice of a TRO request, the Advisory Committee Notes to Rule 65 explain that, "[i]n view of the possibly drastic consequences of a temporary restraining order, the opposition should be heard, if feasible, before the order is granted." Fed. R. Civ. P. 65 advisory committee's note (1966 Amendment). Also, "[b]efore notice can be dispensed with, the applicant's counsel must give his certificate as to any efforts made to give notice and the reasons why notice should not be required. This certificate is in addition to the requirement of an affidavit or verified complaint setting forth the facts as to the irreparable injury which would result before the opposition could be heard." *Id.* "The Rule 65(b) restrictions on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *First Tech. Safety Sys.*, 11 F.3d at 650 (internal quotation marks omitted).

Thus, Rule 65 ensures that the Court only consider the extraordinary remedy of issuing a TRO without notice to the adverse party (or its counsel) in particular circumstances and when

4

certain safeguards have been made. In short, Rule 65(b) requires the movant "to show that the circumstances [are] appropriate for ex parte relief." *First Tech. Safety Sys.*, 11 F.3d at 650 (further explaining that "[t]he normal circumstance for which the district court would be justified in proceeding ex parte is where notice to the adverse party is impossible, as in cases where the adverse party is unknown or is unable to be found," although "another limited circumstance [would be] where notice to the defendant would render fruitless further prosecution of the action" and is supported by "more than assert[ing] that the adverse party would dispose of evidence if given notice").

Additionally, this district court has local rules concerning requests for a temporary restraining order. *See* S.D. Ohio Civ. R. 65.1. The local rules explain that, "[i]n most cases, the Court will not hear or rule on any motion for a temporary restraining order or a preliminary injunction until after the Court holds an informal preliminary conference with all parties to determine what additional proceedings are necessary." S.D. Ohio Civ. R. 65.1(a). The local rules require that motions for a TRO or preliminary injunction "be accompanied by a certificate of the trial attorney or other proof satisfactory to the Court that: (1) the motion and all other filings in the action have been served upon the adverse party's attorney, if known, or if not known, then the adverse party; (2) reasonable efforts to accomplish the service of the motion and other filings have been made; or (3) the reasons, in affidavit form, why such service cannot or need not be made or be required." S.D. Ohio Civ. R. 65.1(b).

Preliminary injunctive relief—including the issuance of a temporary restraining order—is an extraordinary remedy, the purpose of which is to preserve the status quo. *PUI Audio Inc. v. Van Den Broek*, No. 3:21-cv-284, 2021 U.S. Dist. LEXIS 202846, 2021 WL 4905461, at *3 (S.D. Ohio Oct. 21, 2021); *see also* Fed. R. Civ. P. 65; *Procter & Gamble Co. v. Bankers Trust Co.*, 78

F.3d 219, 226 (6th Cir. 1996) ("the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had"). A TRO "should only be granted if the movant can clearly show the need for one." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008).

The Court considers four factors in determining whether to issue a TRO: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *PUI Audio*, 2021 WL 4905461, at *3; *see also Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *N.E. Ohio Coal. for the Homeless and Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Libertarian Party of Ohio v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 200934, 2014 WL 12647018, at *1 (S.D. Ohio Sept. 24, 2014). "The factors are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting a TRO or injunction." *Libertarian Party of Ohio*, 2014 WL 12647018, at *1 (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). The movant bears the burden of demonstrating that a TRO is warranted under Rule 65(b). *ABX Air, Inc. v. Int'l Brotherhood of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016); *see also Libertarian Party of Ohio*, 2014 WL 12647018, at *1 ("[t]he moving party bears the burden of justifying issuance of an injunction, including showing likelihood of success and irreparable harm"); *Burton v. Kettering Adventist Health Care*, No. 3:20-cv-209, 2020 U.S. Dist. LEXIS 106411, 2020 WL 3265526, at *1 (S.D. Ohio June 17, 2020) (denying motion for a TRO).

**B. Elements of Plaintiff's Claims**

Plaintiff's first claim is for copyright infringement, alleging that "Defendant's unauthorized performance and reproduction of Plaintiff's copyrighted musical compositions (the

6

Copyright Works) constitute willful infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106." (Doc. No. 1 at PageID 6.)  Plaintiff also alleges in its Verified Complaint that it is the "co-owner of the Copyright Works" and that it "never authorized, licensed, or granted permission for Defendant to publicly perform or reproduce the Copyright Works." (*Id.*)  Additionally, Plaintiff alleges that "Defendants were put on notice of the infringement pursuant to a cease-and-desist letter submitted on or around May 1, 2023; however, Defendants willfully and intentionally continued to infringe for their financial benefit." (*Id.*)

A court that has proper jurisdiction of a civil action "may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  Federal law provides that, subject to certain exceptions, the copyright owner "has the exclusive rights to do and to authorize any of the following … (1) to reproduce the copyrighted works in copies or phonorecords; … (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership … [and] (4) in the case of … musical … works … to perform the copyrighted work publicly." 17 U.S.C. §§ 106(1), (3), (4).  "Direct copyright infringement occurs when anyone 'violates any of the exclusive rights of the copyright owner.'" *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (quoting 17 U.S.C. § 501(a)).  "Copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Id.* (internal quotation marks omitted).  However, "[a] valid license is an affirmative defense to copyright infringement." *Sony/ATV Publishing, LLC v. Marcos*, 651 F. App'x 482, 485 (6th Cir. 2016).  And, "anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute or who makes a fair use of the work is not

7

an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

Plaintiff's second claim is for trademark infringement, alleging that Plaintiff is "the lawful owner of the U.S. Registration Number 97521349, registered July 26, 2022, for the SLAVE trademark for IC 009." (Doc. No. 1 at PageID 5.) Plaintiff alleges that "each Defendant has infringed upon Plaintiff's registered trademark in interstate commerce by various acts, including, without limitation, the adoption of the trademark and the sale and advertisement of goods, services, and performances in connection with the infringing trademark." (*Id.* at PageID 7.) Plaintiff also alleges that "Defendants' adoption and use of the infringing marks is without permission or authority from Plaintiff and has caused and is likely to cause confusion, mistake and/or intended to deceive those in the relevant market." (*Id.*)

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). A federal statute specifically states:

> Any person who shall, without the consent of the registrant--
>
> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

Regarding the third element for a trademark infringement claim, "[t]he touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007) (internal quotation marks omitted). "The Sixth Circuit utilizes an eight-factor test in ascertaining whether a likelihood of confusion exists: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines." *Id.* "In applying these factors, the court has cautioned that they 'imply no mathematical precision, but are simply a guide to help determine whether confusion is likely.'" *Id.* (quoting *Homeowners Grp. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir.1991)). "Given the fact-specific nature of trademark infringement actions, not all of the eight factors will be relevant in every case." *Id.* "In every case, the ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* (internal quotation marks omitted; alteration adopted).

Plaintiff's third and final claim is for violation of Ohio's Deceptive Trade Practices Act. (Doc. No. 1 at PageID 8.) Plaintiff alleges that it is the owner of the federal trademark registrations identified in the complaint, that the "SLAVE trademark is distinctive," and that "[e]ach Defendant's use of the SLAVE trademark will cause a likelihood of confusion or misunderstanding" in violation of Ohio Rev. Code §§ 4165.02(A)(2) and (A)(3). (*Id.*)

"[L]iability under the Ohio Deceptive Trade Practices Act is appropriately analyzed under the analogous federal [Lanham] Act for unfair competition." *Pierre Inv., Inc. v. CLS Capital Grp., Inc.*, 2022-Ohio-4311, ¶ 41, 202 N.E.3d 870, 885 (Ohio Ct. App. 2022) (citing *HER, Inc. v. RE/MAX First Choice, LLC*, 468 F. Supp. 2d 964, 979 (S.D. Ohio 2007)). An Ohio statute specifically states:

> (A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>
> …
>
> (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another . . . .

Ohio Rev. Code §§ 4165.02(A)(2), (A)(3).

The Ohio Supreme Court has explained that, regarding § 4165.02(A)(2), the defendant "must create a likelihood of customer confusion about 'the source, sponsorship, approval, or certification of goods or services.'" *Wooster Floral & Gifts, L.L.C. v. Green Thumb Floral & Garden Ctr., Inc.*, 2020-Ohio-5614, at ¶ 2, 172 N.E.3d 60, 61 (Ohio 2020) (quoting Ohio Rev. Code § 4165.02(A)(2)). Regarding § 4165.02(A)(3), "[i]n determining whether there is a likelihood of confusion as to the affiliation, connection, or association between products, courts consider numerous factors, including (1) strength of the mark (name) identifying the products, (2) the relatedness of the products, (3) similarity between the marks and the products, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the alleged wrongdoer's intent in selecting the mark, and (8) likelihood of expansion of product lines." *Leventhal & Assoc., Inc. v. Thomson Cent. Ohio*, 128 Ohio App. 3d 188, 197, 714 N.E.2d

10

418, 424 (Ohio Ct. App. 1998) (citing *Cesare v. Work*, 36 Ohio App. 3d 26, 30, 520 N.E.2d 586, 591-92 (Ohio Ct. App. 1987)).

### C. <u>Application</u>

Despite citing the applicable rules in the TRO Motion, Plaintiff did not meet the procedural requirements for issuance of the requested TRO. Each of the following three reasons requires denial of the TRO Motion. *First Tech. Safety Sys.*, 11 F.3d at 650; Fed. R. Civ. P. 65(b); S.D. Ohio Civ. R. 65.1.

First, Plaintiff did not fulfill the requirements in Federal Rule of Civil Procedure 65(b)(1)(B). Plaintiff's attorney did not "certifi[y] in writing any efforts made to give notice [to the adverse party or its attorney] and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also U.S. v. Grable*, No. 1:90:CV:971, 1993 U.S. Dist. LEXIS 3179, 1993 WL 71079, at *2 (W.D. Mich. Mar. 3, 1993) (denying motion for a TRO because the movant's filings did not satisfy Rule 65(b)(1)(B); explaining that the requirement "cannot be overlooked" because "[i]t is error for a district court to issue a temporary restraining order without such certification (if no notice is given to the adverse party)"); *Bleavins v. O'Neal*, No. 2:22-cv-02178, 2022 U.S. Dist. LEXIS 53133, 2022 WL 885176, at *3 (W.D. Tenn. Mar. 24, 2022) (movant failed to comply with Rule 65(b)(1)(B) where, although it asserted that notice should not be required because the adverse party knew about the underlying proceedings, movant's counsel "described no attempts at all to provide notice to [adverse party]" <u>of the motion</u> for a TRO). Therefore, the Court cannot issue the requested TRO.

Second, Plaintiff did not satisfy the requirement in Federal Rule of Civil Procedure 65(b)(1)(A). The Court does <u>not</u> find that "specific facts in an affidavit or a verified complaint <u>clearly show</u> that immediate and irreparable injury, loss, or damage will result to the movant <u>before</u> <u>the adverse party can be heard in opposition</u>." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). It is

11

the emphasized part of that rule that is lacking here.  Given the circumstances presented, the Court finds that specific facts in the Verified Complaint (there is no affidavit) do not clearly show that the adverse party would suffer such harm before the Defendants could be provided notice and heard in opposition.  *Tugrul v. Weiner*, No. 1:15-cv-657, 2015 U.S. Dist. LEXIS 149627, 2015 WL 6755306, at *2 (S.D. Ohio Nov. 4, 2015), *report and recommendation adopted*, 2015 WL 9013122 (S.D. Ohio Dec. 16, 2015) (motion for a TRO denied where movant failed to "submit[] an affidavit setting forth specific facts to show that he will suffer 'immediate and irreparable injury, loss or damage' before defendants can be heard in opposition to the motions for a temporary restraining order so as to satisfy the requirements of Fed. R. Civ. P. 65(b)(1)(A)").  Plaintiff also fails to show that it does not know who the Defendants are, it does not know how to contact them, or that notice to them would render further prosecution of this action fruitless.  *See First Tech. Safety Sys.*, 11 F.3d at 650.  And, the Court's local rules set up procedures to facilitate adjudication of motions for temporary restraining orders.  *See* S.D. Ohio Civ. R. 65.1.  Additionally, as noted below, Plaintiff does not explain why it waited until June 6 to file the TRO Motion.

Third, Plaintiff did not fulfill the requirements in Local Rule 65.1(b).  Plaintiff's TRO Motion (Doc. No. 5) was not "accompanied by a certificate of the trial attorney or other proof satisfactory to the Court that … [provided] the reasons, in affidavit form, why such service [of the motion upon the adverse party's attorney, if known, or if not known, then the adverse party] cannot or need not be made or be required."  S.D. Ohio Civ. R. 65.1(b).  The motion did not include an affidavit, or declaration, or any such reasons "in affidavit form." [2]  *Id.*  In sum, the Court cannot and will not grant Plaintiff's TRO Motion, which requests issuance of a TRO without notice to the Defendants.  Fed. R. Civ. P. 65(b)(1); S.D. Ohio Civ. R. 65.1(b); *Tugrul*, 2015 WL 6755306, at *2

---

[2] The TRO Motion does have a Certificate of Service, but it is unsigned and, regardless, its content does not fulfill the requirements of Local Rule 65.1(b).  (Doc. No. 5 at PageID 38.)

12

(motion for a TRO denied "for failure to comply with the requirements of the Federal and Local Rules for issuance of a temporary restraining order without notice to the opposing parties"); *Bleavins*, 2022 WL 885176, at \*4 (finding that the movant's request for a TRO did "not comply with Rule 65(b) and the Local Rules of this Court," and "failure to satisfy these notice requirements is a basis to deny a motion for a TRO").

Therefore, the Court denies the TRO Motion without reaching its merits. However, the Court notes that it would have had some concerns if it proceeded to the merits of determining whether Plaintiff met its burden to justify issuance of a TRO, based on what has been presented to the Court to date. (The Court stresses that it is not deciding or indicating whether its concerns would cause the Court to deny injunctive relief.) Among the Court's concerns is that Plaintiff acknowledges "Defendants routinely infringe on Plaintiff's trademark when promoting their performances." (Doc. No. 5 at PageID 33.) Yet, Plaintiff does not explain why it did not file this motion weeks (if not months ago), instead waiting until just a few days before a local concert to seek the extraordinary remedy of a TRO. *See, e.g. Burton*, 2020 WL 3265526, at \*3 ("delay in seeking a TRO or preliminary injunction does not preclude any possibility of relief or absolutely preclude a showing of irreparable harm," but "is still a factor to be considered," and "in addition to being considered in balancing the hardships, delay in pursuing relief undercuts claims of irreparable harm and may be considered as circumstantial evidence that the potential harm to plaintiff is not irreparable or as great as claimed") (internal quotation marks omitted; alterations adopted). Another concern is that Plaintiff states it is a "<u>co</u>-owner" of the Copyright Works. (Doc. No. 5 at PageID 33 (emphasis added).) The presence of other owner(s)—none of whom are identified—raises the question of whether those other owner(s) provided Defendants (and/or venues at which the Defendants perform) a license or other permission to use the Copyright Works.

13

These are not the only concerns that the Court has, and (again) it need not, and does not, opine on whether any of the concerns would have been determinative in making an on-the-merits decision.[3] However, these concerns also show why Rule 65(c) provides for a security requirement.  Fed. R. Civ. P. 65(c) ("[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained").  Plaintiff neither mentioned nor addressed Rule 65(c) in its motion (Doc. No. 5).  Plaintiff should, at the least, address the issue of security in any forthcoming argument supporting its request for a preliminary injunction, including in a reply brief.

### III.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 5) but only with respect to its request for issuance of a TRO.  Plaintiff's request for a preliminary injunction within Document Number 5 will be determined at a later time, after Plaintiff has complied with Local Rule 65.1 and the Defendants have been provided notice and an opportunity to respond.  Additionally, the Court **ORDERS** Plaintiff to serve Defendants with a copy of this order and then file a notice informing the Court that it has done so.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, June 9, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[3] In other words, it is entirely possible that the Court will grant Plaintiff's requested preliminary injunction. Additionally, any findings and determinations on a request for a TRO would only apply to that request; the Court will consider each of the factors in connection with Plaintiff's request for a preliminary injunction following notice to Defendants of that request in Plaintiff's motion (Doc. No. 5) and based on what has been presented to the Court at that time. *See Libertarian Party of Ohio*, 2014 U.S. Dist. LEXIS, at *7-8; Fed. R. Civ. P. 65.